# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Charles Almond, | ) | |
|     *Plaintiff*, | ) ) ) | |
| v. | ) | Case No: 15 C 50291 |
| Wexford Health Source, Inc., et al., | ) ) ) | |
|     *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Dr. Shicker's motion to dismiss [77] is granted. Dr. Shicker is terminated from this case.

## STATEMENT

Plaintiff, Charles Almond, an inmate of the Illinois Department of Corrections ("IDOC") housed in the Dixon Correctional Center ("DCC"), brought this suit against defendants, Wexford Health Sources, Inc. ("Wexford"); Jill Wahl, M.D.; Bessie Dominguez, M.D.; Hector Garcia, M.D.; Louis Shicker, M.D.; and Assistant Warden Charles Fasano. Almond alleges a violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983, claiming that a wide-spread medical practice allowed for deliberate indifference to his medical needs, causing him permanent disability. Before the court is Dr. Shicker's Rule 12(b)(6) motion to dismiss Almond's claim against him on the grounds that he has failed to state a claim upon which relief may be granted.

## I. BACKGROUND[1]

On or about May 16, 2013, Almond was injured while running in the prison yard. At the time the injury occurred, Dr. Shicker was the IDOC Medical Director. This job entailed overseeing the medical services for all correctional centers, including the DCC. On May 18, 2013, Almond reported the injury of his right knee and leg to a staff nurse. This nurse was an employee of Wexford. She examined him and provided him with crutches, pain medication, and an ace wrap to help manage the pain. Almond continued to complain of pain on May 24, May 31, and June 17, 2013.

On June 21, 2013, Dr. Dominguez examined Almond after he complained of severe pain and claimed that he had fallen out of his bunk due to the condition. Dr. Dominguez gave him a permit for a lower bunk, gym restriction, and pain medication. Almond visited Dr. Dominguez once again on July 15, 2013, and complained that the treatment was ineffective. Dr. Dominguez decided to keep the same treatment plan and continued to recommend it at subsequent visits.

On September 12, 2013, Almond was examined by Dr. Wahl, who suspected that Almond suffered from a quadricep tear to the right knee. Dr. Wahl recommended that Almond receive a consult from an orthopedic physician. On September 25, 2013, after a medical consultation, Wexford

---

[1]The facts are derived from the second amended complaint and are presumed to be true for purposes of the instant motion. See Bell v. City of Chi., 835 F.3d 736, 738 (7th Cir. 2016).

decided to deny referring Almond to an orthopedic physician and instead to continue treatment onsite. During this time, Almond suffered an injury to his right hip and elbow due to the previous injury to his right knee.

On December 10, 2013, Wexford authorized an offsite consultation with an orthopedic specialist. Almond was transported to an orthopedic specialist at the University of Illinois Chicago Medical Center, on March 7, 2014. The specialist diagnosed a quadricep tendon tear in the right knee. He recommended an MRI to examine the injury further and also suggested that Almond be examined by an orthopedic surgeon. The MRI revealed a partial rupture of the quadriceps tendon and an old healed avulsion fracture and prior tear of the medial meniscus.

On October 7, 2014, Almond was sent back to the orthopedic specialist, who noted that he was examining Almond "by mistake," and once again recommended that Almond see a surgeon. On January 12, 2015, Almond saw an orthopedic surgeon who recommended surgery on the right knee. On March 3, 2015, Almond received the surgery on his right knee, but alleges that he is permanently disabled due to the delay in diagnosis.

In his second amended complaint, Almond alleges that Dr. Shicker and Wexford had notice of a wide-spread practice by medical personnel at the DCC, whereby inmates were routinely denied access to proper medical attention. Almond claims that Dr. Shicker and Wexford were deliberately indifferent to this practice by failing to properly discipline prior instances of medical neglect by their agents, which encouraged future abuse of the medical rights of inmates and caused the unconstitutional treatment resulting in his injury.

Before the court is Dr. Shicker's motion to dismiss Almond's second amended complaint. Dr. Shicker argues that Almond's second amended complaint should be dismissed for failure to state a plausible claim because he does not allege that Dr. Shicker was personally involved in the alleged deliberate indifference to his medical needs. Almond, on the other hand, argues that the second amended complaint states a valid claim because Dr. Shicker should have had notice of an unconstitutional policy or practice and did nothing to try to prevent it.

## II. ANALYSIS

When deciding a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all of the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In order to state an Eighth Amendment, deliberate indifference claim, Almond must allege that Dr. Shicker was personally responsible for the deprivation of his constitutional right. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). This component cannot be satisfied by merely relying on the respondeat superior theory, claiming liability due to the defendant's supervisory role. Arnett v. Webster, 658 F.3d 742, 756 (7th Cir. 2011). In fact, the defendant will only be found liable if the conduct that caused the medical deprivation "occurs at his direction or with his knowledge and consent." Gentry, 65 F.3d at 561. In other words, the defendant in his supervisory capacity had to be aware of the unconstitutional conduct, and in some way or another, "facilitate it, condone it, approve it, or turn a blind eye for fear of what they might see." T.E. v. Grindle, 599 F.3d 583, 588

2

(7th Cir. 2010) (quoting Jones v. City of Chi., 856 F.2d 985, 992 (7th Cir. 1988)).

Here, Dr. Shicker argues that Almond has not adequately alleged his personal involvement within the second amended complaint. Citing Monell v. New York Department of Social Services, 436 U.S. 658 (1978), Almond argues that he has properly alleged that Dr. Shicker was personally responsible for his lack of treatment because Dr. Shicker was aware of a custom or practice at the DCC of not providing sufficient medical care to inmates. Almond further argues that Dr. Shicker encouraged this practice by failing to discipline the agents that were responsible for the medical deprivations.

Almond has conflated an official capacity claim under Monell with an individual capacity claim requiring personal involvement. First, a Monell claim against a state employee in his official capacity is the same as a suit against the government entity in which they are employed. Sanville v. McCaughtry, 226 F.3d 724, 732-33 (7th Cir. 2001). But Monell claims can only be applied to municipalities, not to state governments or entities, which are immune under the Eleventh Amendment. Joseph v. Bd. of Regents of Univ. of Wis. Sys., 432 F.3d 746, 747-48 (7th Cir. 2005). Accordingly, Almond is unable to sustain a Monell claim against Dr. Shicker in his official capacity. Second, Almond has failed to allege that Dr. Shicker, in his individual capacity, had the requisite personal involvement required to state a §1983 claim. There are no allegations that Dr. Shicker was involved with any of the medical treatment provided for Almond. Moreover, the second amended complaint is void of facts which adequately allege that Dr. Shicker had ever been aware of Almond's existence, much less the delay in treating his medical condition, and chose to facilitate it, condone it, approve it, or turn a blind eye to it. Arnett, 658 F.3d at 757 (quoting Gentry, 65 F.3d at 561). Dr. Shicker's actual knowledge of a purported practice or policy of failing to provide adequate medical care is distinct from claiming actual knowledge of Almond's condition. See Schlueter v. Barnhart, No. 15 C 50024, 2017 WL 319153, at * 4-5 (N.D. Ill. Jan. 23, 2017) (finding that there was an insufficient claim of personal involvement with similar facts, where there was no allegation of actual knowledge of the plaintiff's serious medical need). Almond also attempts to overcome these deficiencies by asserting that Dr. Shicker's failure to discipline his agents constituted the requisite personal involvement, but this is irrelevant. See Olive v. Wexford Corp., 494 F. App'x 671, 673 (7th Cir. 2012) (holding that Dr. Shicker could not be vicariously liable for his subordinates' acts even though he had knowledge of the misconduct but failed to fix it). Accordingly, the court finds that the second amended complaint is absent of plausible facts sufficient to allege personal involvement by Dr. Shicker.

### III. CONCLUSION

For the foregoing reasons, the court finds that Almond's second amended complaint does not include sufficient facts to state a plausible claim against Dr. Shicker. Therefore, Dr. Shicker's motion to dismiss is granted, and he is terminated from the case.

Date: 6/22/2017

ENTER:

_____
FREDERICK J. KAPALA

District Judge